IN THE UNITED STATES DISTRICT COURT
FOR THE NORTHERN DISTRICT OF GEORGIA
ATLANTA DIVISION

| | |
|---|---|
| UNITED STATES OF AMERICA<br><br>v.<br><br>SHAWN TYSON and NATASHA NATILE FRANCE,<br><br>    Defendants. | CRIMINAL ACTION FILE<br><br>NO. 1:19-cr-103-TCB |

# **O R D E R**

This case comes before the Court on Magistrate Judge J. Elizabeth McBath's final report and recommendation (the "R&R") [311], which recommends denying Defendant Shawn Tyson's motion [251] to dismiss counts ten, twelve, and fourteen; his motion [252] to suppress evidence; his motion [253] to sever count fifteen; and his adopted motion [285] to suppress evidence. It also recommends denying Defendant Natasha France's motion [266] to dismiss counts ten and twelve. France and Tyson have filed objections [314, 315] to the R&R.

## I. Background[1]

Defendants France and Tyson face firearm-related charges after a joint investigation in the Northern District of Georgia and the District of the Virgin Islands.

Relevant to this R&R, the indictment in the District of the Virgin Islands led to the issuance of an arrest warrant for Tyson. Agents traveled to his residence to execute the warrant, but he was not home. Instead, Kareem McKenzie answered. McKenzie explained that he rented space in the residence from Tyson. After agents asked to enter the residence to ensure Tyson was not present, McKenzie gave his consent for the agents to do so.

After agents entered the residence, McKenzie explained to agents more about the home, including where McKenzie slept and where Tyson's bedroom was located. Agents saw that Tyson's bedroom door was locked and did not attempt to enter. But agents did enter an open

---

[1] The Court provides a summary of the facts as relevant but incorporates by reference the fact summary in the R&R.

bedroom. Agents thereafter found evidence of a firearm workshop within that open bedroom.

Later—after the investigation finished—France and Tyson were prosecuted in the District of the Virgin Islands. France pleaded guilty to eight counts relating to (1) the unlicensed transfer of firearms to Tyson; (2) the mailing of non-mailable firearm parts in cohort with Tyson; and (3) the delivery of firearms to a common carrier without written notice that the packages contained firearms. France was thereafter sentenced to forty-one months imprisonment with three years of supervised release to follow.

Tyson went to trial. He argued that the government had the wrong person. Notwithstanding his defense of misidentification, the jury found him guilty of mailing a firearm on November 14, 2018, but found him not guilty of delivering a firearm to a common carrier without proper notice on that same date. The jury found him guilty on one additional count and not guilty on five additional counts. He was sentenced to 120 months imprisonment with three years of supervised release to follow.

After the proceedings in the District of the Virgin Islands, a federal grand jury in the Northern District of Georgia indicted France and Tyson. Relevant to this R&R, both Defendants face charges for (1) making false statements to licensed firearm dealers, and (2) causing the United States Postal Service to not file a required shippers export declaration. Tyson also faces a charge for the unlawful possession of a firearm as a convicted felon.

## II.  Legal Standard

A district judge has a duty to conduct a "careful and complete" review of a magistrate judge's R&R. *Williams v. Wainwright*, 681 F.2d 732, 732 (11th Cir. 1982) (per curiam) (quoting *Nettles v. Wainwright*, 677 F.2d 404, 408 (5th Cir. Unit B 1982)). This review may take different forms, however, depending on whether there are objections to the R&R. The district judge must "make a de novo determination of those portions of the [R&R] to which objection is made." 28 U.S.C. § 636(b)(1)(C). In contrast, those portions of the R&R to which no objection is made need only be reviewed for "clear error." *Macort v. Prem, Inc.*, 208 F. App'x 781, 784 (11th Cir. 2006) (per curiam) (quoting

*Diamond v. Colonial Life & Accident Ins.*, 416 F.3d 310, 315 (4th Cir. 2005)).[2]

"Parties filing objections must specifically identify those findings objected to. Frivolous, conclusive or general objections need not be considered by the district court." *Nettles*, 677 F.2d at 410 n.8. "This rule facilitates the opportunity for district judges to spend more time on matters actually contested and produces a result compatible with the purposes of the Magistrates Act." *Id.* at 410.

After conducting a complete and careful review of the R&R, the district judge "may accept, reject, or modify" the magistrate judge's findings and recommendations. 28 U.S.C. § 636(b)(1)(C); *Williams*, 681 F.2d at 732. The district judge "may also receive further evidence or

---

[2] *Macort* dealt only with the standard of review to be applied to a magistrate's factual findings, but the Supreme Court has indicated that there is no reason for the district court to apply a different standard to a magistrate's legal conclusions. *Thomas v. Arn*, 474 U.S. 140, 150 (1985). Thus, district courts in this circuit have routinely reviewed both legal and factual conclusions for clear error. *See Tauber v. Barnhart*, 438 F. Supp. 2d 1366, 1373–74 (N.D. Ga. 2006) (collecting cases). This is to be contrasted with the standard of review on appeal, which distinguishes between the two. *See Monroe v. Thigpen*, 932 F.2d 1437, 1440 (11th Cir. 1991) (holding that when a magistrate's findings of fact are adopted by the district court without objection, they are reviewed on appeal under a "plain error standard" while questions of law always remain subject to de novo review).

5

recommit the matter to the magistrate judge with instructions." 28 U.S.C. § 636(b)(1)(C).

## III. Discussion

### A. Recusal

Tyson first objects to the R&R on the grounds that Magistrate Judge McBath has a conflict of interest because she worked as an Assistant United States Attorney ("AUSA") in the Northern District of Georgia while Tyson's case was pending.[3] He invokes 28 U.S.C. § 455(a).

Section 455(a) provides that "[a]ny . . . judge . . . of the United States shall disqualify himself in any proceeding in which his impartiality might reasonably be questioned." 28 U.S.C. § 455(a). "The purpose of this provision is to promote confidence in the judiciary by avoiding even the appearance of impropriety." *United States v. Davis*, 789 F. App'x 105, 111 (11th Cir. 2019) (citing *United States v. Patti*, 337 F.3d 1317, 1321 (11th Cir. 2003)).

---

[3] The Court finds no basis for Tyson's additional suggestion that because Judge McBath was not the magistrate judge before whom the evidentiary hearing for the motion to suppress was conducted, she should have recused herself. Thus, to the extent he is arguing for recusal on this basis, his objection is overruled.

6

Under § 455(a), the issue is "whether an objective, disinterested, lay observer fully informed of the facts . . . would entertain a significant doubt about the judge's impartiality." *See Patti,* 337 F.3d at 1321 (quoting *Parker v. Connors Steel Co.*, 855 F.2d 1510, 1524 (11th Cir. 1988)). "It takes more than speculation or suspicion of [impartiality] to require recusal" under § 455(a). *Diaz v. King*, 687 F. App'x 709, 713 (10th Cir. 2017) (citing *United States v. Cooley*, 1 F.3d 985, 993 (10th Cir. 1993)).

Here, Tyson has not shown that recusal was warranted. While Judge McBath did work as an AUSA in the Atlanta office, Tyson has not shown that she was involved in the case in any capacity, which does not warrant recusal. *See Davis*, 789 F. App'x at 111–12 (holding no reasonable person would question the impartiality of the magistrate judge who previously worked as an AUSA and had no personal involvement in or knowledge of defendant's case).

Nor has Tyson shown that Judge McBath held a supervisory role over his case such that knowledge of the case could be attributed to her. *See, e.g.*, *Lease v. Fishel*, 712 F. Supp. 2d 359, 374 (M.D. Pa. 2010)

(distinguishing between a supervisory role as the United States Attorney and a role as an AUSA). Indeed, Judge McBath's government service included the criminal appeals and white-collar fraud divisions, divisions distinct from those participating in Tyson's case.

Therefore, the Court will overrule Tyson's objection.[4]

## B.  Double Jeopardy

France and Tyson separately object to the R&R's holding that the prosecution of both Defendants in the Northern District of Georgia does not violate the Double Jeopardy Clause. France argues that the charges brought against her contain the same elements as the charges to which she pled guilty in the District of the Virgin Islands. Tyson argues that his verdict of not guilty on some counts in the District of the Virgin

---

[4] A possible yet similarly unpersuasive argument exists for recusal based upon 28 U.S.C § 455(b)(3). Section 455(b)(3) provides that judges should disqualify themselves "[w]here [they have] served in governmental employment and in such capacity participated as counsel, adviser or material witness concerning the proceeding or expressed an opinion concerning the merits of the particular case in controversy." However, as in § 455(a), the judge must have been an active participant in the case while serving as an AUSA to warrant recusal. *See Mangum v. Hargett*, 67 F.3d 80, 83 (5th Cir. 1995) (finding the judge's decision not to recuse appropriate when the judge never actively participated in the case as a prosecutor (citing *United States v. Gipson*, 835 F.2d 1323, 1326 (10th Cir. 1988))); *see also United States v. Anyanwu*, No. 1:12-cr-190-TWT, 2016 WL 4079922, at *1 (N.D. Ga. Aug. 1, 2016).

Islands precludes prosecution in the Northern District of Georgia. The Court will overrule both objections.

First, the R&R correctly found that the prosecution of France does not violate the Double Jeopardy Clause. In *Blockburger v. United States*, 284 U.S. 299 (1932), the Supreme Court held that the Double Jeopardy Clause does not prohibit prosecution under multiple charges for the same conduct when each charge requires "proof of a fact which the other [charge] does not." *See id.* at 304 (citing *Gavieres v. United States*, 220 U.S. 338, 342 (1911)). *See generally United States v. Lee*, 29 F.4th 665, 670 (11th Cir. 2022) (stating that the *Blockburger* test is ultimately a rule of "statutory construction"). Therefore, the relevant inquiry is whether France faces prosecution for charges that include the same "statutory elements" present in the previous charges. *See Currier v. Virginia*, 138 S. Ct. 2144, 2153 (2018).

France is first charged under 18 U.S.C. § 305, which requires the prosecution to show that France "knowingly fail[ed] to file or knowingly submit[ted] false or misleading export information through the Shippers Export Declaration . . . ." France did plead guilty to offenses

9

during the course of the prosecution completed in the District of the Virgin Islands. But none of the charges relates to the non-disclosure (or fraudulent disclosure) of export information through the shippers export declaration.[5] Therefore, the Double Jeopardy Clause does not prohibit the prosecution of France under 18 U.S.C. § 305.

France is also charged under 18 U.S.C. § 922(a)(6).[6] That criminal statute requires the prosecution to show that France "knowingly" made any "false or fictitious oral or written statement" in order to "deceive" a licensed firearm dealer during the course of attempted acquisition. The closest statutory analogue to which France pled guilty in the District for the Virgin Islands is 18 U.S.C. § 922(a)(5), which criminalizes the unlicensed transport or delivery of a firearm to a person who the transferor has reasonable cause to know does not reside in the same state as the transferor. But § 922(a)(5) deals with unlicensed transport

---

[5] France pleaded guilty to charges under 18 U.S.C. §§ 922(a)(5) & 924(a)(1)(D); 18 U.S.C. § 1715; and 18 U.S.C. § 922(e).

[6] France contends that the R&R compares the "wrong statutes." But the R&R includes additional statutes to those Tyson argues violate the Double Jeopardy Clause, meaning the inquiry was inclusive of all charges. And under that complete inquiry, the R&R held that none of the charges brought against France in the Northern District of Georgia offends the Double Jeopardy Clause.

10

of firearms whereas § 922(a)(6) deals with the acquisition of firearms. Stated otherwise, the two crimes might relate in conduct but not elemental proof.

Therefore, the Double Jeopardy Clause permits the prosecution of France in the Northern District of Georgia under 18 U.S.C. § 922(a)(6), and the Court will overrule France's objection.[7]

Second, the R&R correctly found that Tyson's prosecution does not violate the Double Jeopardy Clause. In *Ashe v. Swenson*, 397 U.S. 436 (1970), the Supreme Court held that collateral estoppel principles apply under the Double Jeopardy Clause. Thus, the Double Jeopardy Clause "forbids a second trial only if to secure a conviction the prosecution must prevail on an issue the jury necessarily resolved in the defendant's favor in the first trial." *Currier*, 138 S. Ct. at 2150. *See also id.* (explaining that the jury must necessarily have considered the issue in its acquittal). And where a jury's verdict is incompatible—that is, where

---

[7] The *Blockburger* analysis, finding that the charges in the Northern District of Georgia against France differ materially from those brought against France in the District of the Virgin Islands, also applies to Tyson. Stated otherwise, because Tyson faced the same charges as France, there is necessarily no double jeopardy issue. Nevertheless, this Court will still consider Tyson's objection based on his verdict of not guilty on some charges in the District of the Virgin Islands.

an acquittal on one count necessarily contradicts a conviction on the other—a defendant cannot "insulate [the charges] from relitigation." *Bravo-Fernandez v. United States*, 137 S. Ct. 352, 363 (2016).

Here, Tyson's jury verdict in the District of the Virgin Islands does not implicate the Double Jeopardy Clause because the jury's verdict is inconsistent. The jury found him guilty of mailing non-mailable firearms on November 14, 2018. Yet notwithstanding his sole defense of misidentification, the jury found him not guilty of delivering firearms to a common carrier without proper notice on the same date. Finding that he was the individual who mailed the firearms on one count but not the other is inconsistent. Because the jury's verdict concerning counts relating to November 14, 2018, is inconsistent, preclusion under the Double Jeopardy Clause cannot apply. *See Currier*, 138 S. Ct. at 2150 (stating that preclusion under the Double Jeopardy Clause applies only if "the jury necessarily resolved" an issue).

Such inconsistency also prevents the other charges in the jury's verdict from providing preclusive effect. The same jury in the District for the Virgin Islands found Tyson not guilty for firearm-mailing

offenses taking place on November 10 and 13, 2018. But because of the inconsistency associated with the charges relating to the events on November 14, the jury's entire verdict on all counts cannot have preclusive effect. *See Bravo-Fernandez*, 580 U.S. at 366 (explaining how "no rational jury" could reach "conflicting verdicts").

Therefore, the Double Jeopardy Clause does not prevent the prosecution of Tyson on any of the charges in the Northern District of Georgia, and the Court will overrule his objection.[8]

### C. Suppression of Evidence

Tyson objects to the R&R's finding that the evidence seized from a warrantless search of Tyson's residence should not be suppressed under the Fourth Amendment. While the Fourth Amendment permits many types of warrantless searches, at issue here is whether a third party gave valid consent for authorities to search (1) the common area of a residence, and (2) an unlocked and open bedroom within the residence.

---

[8] Tyson argues that his defense was "evenly centered on that of reasonable doubt." [315]. But a defense like misidentification necessarily relates to the prosecution not meeting its burden of proof beyond a reasonable doubt. Stated otherwise, the argument that the prosecution failed to meet its burden is not a separate defense.

Third parties can consent to the search of a home when that person "possesses common authority over the premises . . . ." *Illinois v. Rodriguez*, 497 U.S. 177, 181 (1990) (*citing United States v. Matlock*, 415 U.S. 164, 171 (1974)). To "possess[] common authority" requires a showing that the third party has "joint access or control for most purposes." *Id.* (quoting *Matlock*, 497 U.S. at 171 n.7).

The search of the common room of the residence was constitutional. The third party—McKenzie—communicated information consistent with someone with "common authority" by: (1) answering the door; (2) telling officers that he pays rent to live in the residence; (3) providing an explanation of the living situation to authorities; and (4) explaining his relationship with Tyson. While the living situation was not necessarily prototypical, officers had requisite information to allow McKenzie to consent to the search of the common areas.

So too the search of the unlocked, open bedroom was constitutional. McKenzie consented to the search of a room that was open, unlocked, and entirely distinct from Tyson's personal bedroom. McKenzie did not consent to the search of Tyson's bedroom—indeed,

Tyson's bedroom was locked and went unsearched at that time. Thus, where the bedroom in question was not treated as private and instead as a joint, common area, the third party had the authority to consent to the agents' search. *See, e.g.*, *United States v. Son*, No. 1:12-cr-42-ODE-JFK, 2012 WL 4711978, at *8 (N.D. Ga. Oct. 2, 2012) (concluding that a third party's consent to search a guest bedroom was valid in part because "[t]he door was not locked").

Therefore, the Court will overrule Tyson's objection.

**D.   Motion to Sever**

Tyson objects to the R&R's refusal to sever count fifteen from the trial. Because count fifteen concerns the possession of a firearm as a convicted felon, he argues its inclusion would cause prejudice because he would be the only Defendant with a prior felony conviction.

Tyson's objection turns on the Federal Rules of Criminal Procedure. While Rule 8 generally permits the joinder of counts in an indictment, Rule 14(a) permits a defendant to sever a count from an indictment upon petition to the court. A motion to sever succeeds only where including the count would violate a "specific trial right of one of

the defendants, or prevent the jury from making a reliable judgment about guilt or innocence." *Zafiro v. United States*, 506 U.S. 534, 539 (1993). Stated otherwise, there must exist compelling prejudice for severance to be required. *See, e.g.*, *United States v. Walser*, 3 F.3d 380, 386–87 (11th Cir. 1993) (explaining that courts must ask whether the jury can follow limiting instructions and render a fair and impartial verdict).

The record contains no compelling prejudice to sever count fifteen. Tyson contends he will face prejudice from the jury's knowledge of his past felony conviction. But the objection fails to explain why a limiting instruction cannot remedy his purported prejudice. *See Walser*, 3 F.3d at 387 (citation omitted) ("[I]f the possible prejudice may be cured by a cautionary instruction severance is not required."). Therefore, the Court will overrule his objection.

## IV. Conclusion

The Court has carefully reviewed the R&R and all objections thereto. Having done so, the Court finds no clear error in the portions of the R&R not objected to. *Macort*, 208 F. App'x at 784. Further, the

Court finds that Magistrate Judge McBath's factual and legal conclusions were correct and that neither France nor Tyson's objections have any merit. Therefore, the Court adopts as its Order the R&R [311]. Tyson's motion [251] to dismiss counts ten, twelve, and fourteen are denied; his motion [253] to sever count fifteen is denied; his motion [252] to suppress evidence is denied; his adopted motion [285] to suppress evidence filed by France is denied; and France's motion [266] to dismiss counts ten and twelve is denied.

    IT IS SO ORDERED this 22nd day of August, 2022.

                                        Timothy C. Batten, Sr.
                                        Chief United States District Judge